UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
DAN CLARK, *et al.*,

                Plaintiffs,

      v.

THE CITY OF SEATTLE, *et al.*,

                Defendants.
_____

No. C17-0382RSL

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

This matter comes before the Court on "Defendants' Motion to Dismiss." Dkt. # 41. Having reviewed the Complaint and the memoranda submitted by the parties,[1] the Court finds as follows:

In January 2016, City of Seattle Ordinance 124968 came into effect. The Ordinance provides a mechanism through which for-hire drivers in Seattle can collectively bargain with the companies that hire, contract with, and/or partner with them. The Ordinance applies only to for-hire drivers who are independent contractors, not employees. Pursuant to the procedures set forth in the Ordinance, Teamsters Local 117 notified three driver coordinators that it would like to be the sole and exclusive representative of their drivers in collective bargaining. Plaintiffs are drivers who provide transportation services to individuals in Seattle and who do business with

---

[1] The Court finds that this matter can be resolved on the papers submitted. The parties' requests for oral argument are DENIED.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

one or more of the targeted driver coordinators. Plaintiffs filed this action arguing that the Ordinance is preempted by the National Labor Relations Act ("NLRA"), violates their First Amendment rights of speech and association, and is preempted by the Drivers' Privacy Protection Act ("DPPA").

On April 4, 2017, the Court temporarily enjoined enforcement of the Ordinance because plaintiffs had raised serious questions regarding their DPPA claim. See Chamber of Commerce of the United States of America v. City of Seattle, C17-0370RSL, Dkt. # 49 (W.D. Wash. Apr. 4, 2017). Defendants subsequently filed this motion to dismiss, arguing that plaintiffs' NLRA and First Amendment claims are not ripe and that all three claims fail as a matter of law. Defendants' ripeness challenges implicate the Court's subject matter jurisdiction and are considered under Fed. R. Civ. P. 12(b)(1). Where defendants challenge the adequacy of plaintiffs' claims under Fed. R. Civ. P. 12(b)(6), the Court must determine whether plaintiffs have alleged facts that state a claim for relief that is plausible, not merely possible. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

**A. NATIONAL LABOR RELATIONS ACT CLAIM**

The Court has reviewed the arguments raised in support of and opposition to the motion to dismiss plaintiffs' National Labor Relations Act ("NLRA") causes of action and finds no reason to alter its preliminary conclusions regarding these claims. Plaintiffs argue that the Ordinance is preempted by two sections of the NLRA, § 8(e) and § 8(b)(4). Plaintiffs' NLRA claims are based on the assertion that the Ordinance authorizes labor organizations to compel driver coordinators to stop doing business with independent drivers who do not want to be represented by the labor organization.

Plaintiffs argue that the Ordinance violates § 8(e) of the NLRA insofar as it allows the Teamsters and the driver coordinators to negotiate an agreement requiring drivers to become

union members (*i.e.*, a union shop agreement).[2] There are three distinct problems with this argument. First, the issue is not ripe for judicial determination. Ripeness is "peculiarly a question of timing designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 1999) (internal citations and quotation marks omitted). In the circumstances presented here, there are too many facts that need to be developed before the preemptive effect of § 8(e) could properly be addressed. Contrary to the drivers' repeated assertion, the Ordinance does not require that the driver coordinator cease doing business with drivers unwilling to accept the Teamsters' representation. Section 6.310.735.H.4. of the Ordinance authorizes the negotiation of a union shop provision, but it neither requires nor precludes such an arrangement. Dkt. # 42-1 at 12. Whether the Teamsters will obtain statements of interest from a majority of qualified drivers working for any particular driver coordinator, whether the City will certify the Teamsters as the exclusive driver representative ("EDR"), whether the union will seek and/or obtain a union shop provision, whether the City would approve such a provision, and whether a named plaintiff would be impacted by such a provision must all be resolved before the identified conflict between § 8(e) and the Ordinance could appear. The Court is loath to offer an advisory opinion or to declare rights in a hypothetical case. Neither the factual readiness of the issue for adjudication nor the potential hardships that would be caused by awaiting the negotiation of the contract terms justify the exercise of jurisdiction at the moment. Nat'l Park Hosp. Ass'n v. Dep't of the Interior, 538 U.S. 803, 807 (2003).[3]

---

[2] In relevant part, 29 U.S.C. § 158(e) makes it an unfair labor practice for any labor organization or employer to enter into any contract or agreement whereby the employer agrees "to cease doing business with any other person."

[3] To the extent plaintiffs are arguing that a violation of § 8(e) will arise as soon as the Teamsters are certified as the exclusive bargaining representative, the argument is unpersuasive. Even if the Court were willing to overlook the fact that certification is dependent on the independent acts of the for-hire drivers, § 8(e) precludes a labor organization and an employer from entering into a certain type of

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                -3-

Second, plaintiffs have asserted a facial challenge to the Ordinance which requires them to show that "no set of circumstances exists under which the [Ordinance] would be valid." U.S. v. Salerno, 481 U.S. 739, 745 (1987). They cannot, as a matter of law, make such a showing. A violation of § 8(e) is not a foregone conclusion, and there are a number of contingent events (described in the preceding paragraph) which must occur before even an arguable violation could arise. The Ordinance does not require the EDR and the driver coordinator to enter into a union shop agreement. Thus, an EDR can be certified and a collective agreement negotiated that does not require the driver coordinator to cease doing business with non-member drivers. Because the Ordinance can be validly enforced in those circumstances, plaintiffs' facial challenge, even if ripe, fails as a matter of law.

Third, § 8(e) of the NLRA prohibits certain activities on the part of labor organizations. "Labor organization" is defined as an organization in which employees participate for particular purposes. 29 U.S.C. § 152(5). None of the parties to this dispute contends that the for-hire drivers are employees, however. The Ordinance explicitly states that it does not apply to drivers who are employees under the NLRA. Thus, the plain meaning of the statute suggests that an organization representing non-employee drivers is not a labor organization for purposes of § 8(e). Pac. Maritime Assoc. v. Local 63, Int'l Longshoremen's Union, 198 F.3d 1078, 1081 (9th Cir. 1999). In Pac. Maritime, the Ninth Circuit found that the definition of "labor organization" is unambiguous, that the 1959 amendments to the NLRA did not increase the types of labor organizations that could be held liable under the act but rather broadened the activities for which organizations already covered by the act could be liable, and applied the plain meaning of "labor

---

agreement. The existence and terms of the negotiated agreement, not the designation of a bargaining representative, is the key to a § 8(e) violation. Plaintiffs' assertion that the designation of a bargaining representative will cause them harm because they will then refuse to drive for Uber or Lyft turns the § 8(e) analysis on its head. That section precludes agreements compelling the employer to cease doing business with another person: if plaintiffs choose to cease doing business with the employer, that is their own decision and does not implicate § 8(e).

organization." The Ninth Circuit concluded that a union local representing public employees -- a class of worker excluded from the NLRA's definition of employee -- was not a "labor organization" under the act. Plaintiffs nevertheless argue that, because the Teamsters represents NLRA-covered employees in other workplaces, it qualifies as a "labor organization" in all contexts. While there are some pre-Pac. Maritime cases that support plaintiff's argument, more recent case law suggests that where the NLRA-covered union members are not involved in a particular dispute, the NLRA does not apply. Air Line Pilots Ass'n v. N.L.R.B., 525 F.3d 862, 870 (9th Cir. 2008). Regardless, the Court need not resolve this issue. In the context of plaintiff's facial challenge, it is enough to note that the Ordinance does not require EDRs to be "labor organizations" as that term is defined in the NLRA. It is entirely possible that the non-employee drivers will choose as their representative an entity involved only in representing non-employees, in which case there would be no colorable NLRA claim. Until the Ordinance is applied in a way that potentially conflicts with the NLRA, plaintiff's challenge is premature.

Plaintiffs also argue that the Ordinance is preempted because it conflicts with § 8(b)(4) of the NLRA. Section 8(b)(4) makes it an unfair labor practice for a labor organization to "threaten, coerce, or restrain any person engaged in commerce" with the object of forcing a self-employed person to join the labor organization[4] or forcing any person to cease doing business with any other person. Unlike § 8(e), there need not be an express or implied agreement between the labor organization and the employer before a violation of § 8(b)(4) can arise. Nevertheless, this claim is not ripe for resolution. Whether the Teamsters will be designated as the representative of any group of for-hire drivers, whether it will attempt to negotiate a union shop provision with the driver coordinator, and whether such efforts could reasonably be viewed as a threat, coercion, or restraint on the named plaintiffs have yet to be seen. In addition, plaintiffs have not shown that

---

[4] Plaintiffs conflate union representation with union membership. Section 8(b)(4) arguably precludes a labor organization from requiring a self-employed person to join the organization: it does not preclude universal representation of members and non-members in a work group.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS            -5-

they are likely to establish that § 8(b)(4) applies to an organization representing independent contractors.

**B. FIRST AMENDMENT CLAIM**

Plaintiffs' fourth cause of action is based on alleged violations of their First Amendment rights of speech and association. According to plaintiffs, the Ordinance will compel them to be represented by an EDR and will limit their ability to negotiate contract terms with the driver coordinators.[5] These statements are true. The issue, however, is whether the obvious and intended effects of legislation authorizing exclusive collective bargaining constitute a First Amendment violation.

In <u>Minn. State Bd. for Community Colleges v. Knight</u>, 465 U.S. 271 (1984), the State of Minnesota authorized public employees who were not covered by the NLRA to collectively bargain over the terms and conditions of their employment. Under the state statute, if the employees selected a representative, the representation was exclusive as to both mandatory and non-mandatory subjects of bargaining. Public employees who chose not to be members of the representative organization were nevertheless prevented from negotiating separately with the employer. A group of community college faculty members challenged the state statute on First Amendment grounds. 465 U.S. at 273. The Supreme Court found that there was no deprivation of their freedom of association. The employees remained free to form whatever advocacy group they liked, and whatever pressure they felt to join the union was "no different from the pressure to join a majority party that persons in the minority always feel. Such pressure is inherent in our system of government; it does not create an unconstitutional inhibition on associational freedom." 465 U.S. at 290. The Court also rejected the employees' speech claim, finding that they remained free to speak out on any job-related topic: "[a] person's right to speak is not

---

[5] To the extent plaintiffs allege that the EDR will negotiate union shop provisions with one or more driver coordinators, the claim is not ripe for the reasons discussed above.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                -6-

infringed when government simply ignores that person while listening to others." 465 U.S. at 288. See also Mentele v. Inslee, C15-5134RBL, 2016 WL 3017713 (W.D. Wash. May 26, 2016).

In this case, plaintiffs have not identified any provision of the Ordinance that restrains their expressive activities, ties them to the EDR's expressive activities, or prevents them from speaking to the driver coordinators. The Ordinance neither promotes nor prohibits the dissemination of any particular idea or bargaining position, and plaintiffs make no attempt to show that the legislative authorization for exclusive collective negotiations, standing alone, constitutes impermissible government interference in the marketplace of ideas. Nor will the certification of an EDR compel plaintiffs to become members of the EDR, compel them to financially support the EDR, prevent them from criticizing the EDR or the negotiated contract terms, or otherwise affiliate them with the EDR's petitioning, speech, or policy positions. The selection of an EDR by majority vote -- as specified in the Ordinance -- would make unreasonable any assumption that all members of the bargaining unit support the representative, much less every one of its policy positions. Bierman v. Dayton, __ F. Supp.3d __, 2017 WL 29661, at * 6 (D. Minn. Jan. 3, 2017). The mere existence of an exclusive bargaining representative is not, according to the Supreme Court, enough to infringe the associational or speech rights of the represented employees.

More recently, there is some indication in the Supreme Court's jurisprudence in this area that certain Justices are reconsidering the historic balance between First Amendment and collective bargaining interests, especially where union membership is compelled and/or the union collects compulsory fees. See Knox v. Serv. Emps. Int'l Union, Local 1000, 567 U.S. 298, 310-11 (2012). The Supreme Court has not, however, revisited Knight or otherwise overturned legislative authorizations of collective and exclusive bargaining. Knox itself dealt with a union's overt political activity in a hard-fought legislative battle that all members of the bargaining unit were compelled to fund. This case, on the other hand, involves nothing more than a legislative

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                -7-

enactment authorizing collective bargaining. Because the Supreme Court has held that exclusive representation, standing alone, does not violate the First Amendment, there is no need to balance the non-existent intrusion against the governmental interests that prompted defendants to enact the Ordinance. To the extent plaintiffs' First Amendment claim is based on a fear that they will be forced to pay fees to the union and/or to fund speech or political activities with which they disagree, their claim is not ripe for adjudication. See Harris v. Quinn, __ U.S. __, 134 S. Ct. 2618, 2628 (2014) (summarizing the case law related to the payment of compulsory union fees by public employees and noting that facial constitutional challenges to the fees were premature until the union actually engaged in political or ideological activities, citing Railway Employes' Dep't v. Hanson, 351 U.S. 225, (1956)).

**C. DRIVER'S PRIVACY PROTECTION ACT**

Upon request of a qualified driver representative, a driver coordinator must disclose the names, addresses, and phone numbers of its qualifying drivers. The implementing rules also require disclosure of for-hire driver license/permit numbers (issued by King County and/or the City of Seattle). Dkt. # 46-1 at 4. Plaintiffs allege that the disclosure of the for-hire driver number violates and is preempted by the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2722(a). Dkt. # 1 at ¶ 83.[6] The DPPA precludes a state department of motor vehicles from disclosing personal information about an individual obtained by the department in connection with a motor vehicle record unless the information is sought for a permissible purpose. 18 U.S.C. § 2721. The statute also makes it unlawful for private actors to knowingly obtain or further disclose "personal information, from a motor vehicle record, for any use not permitted" by the statute. 18 U.S.C. § 2722.

In enacting the DPPA, Congress was concerned that many states were collecting personal

---

[6] Plaintiffs also raised a DPPA challenge to the requirement that the driver coordinators disclose the state-issued driver's license numbers. That requirement has been deleted. Dkt. # 46-1 at 4.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS        -8-

information as a condition of granting a driver's license and then selling the information to generate revenue for the state. 139 Cong. Rec. 29466, 29468, 29469 (1993); 140 Cong. Rec. 7929 (1994). Congress sought to ensure that the personal information demanded by the state in exchange for a license was used for a bona fide purpose and not disclosed to stalkers, criminals, or profiteers. See <u>Dahlstrom v. Sun-Times Media, LLC</u>, 777 F.3d 937, 944 (7th Cir. 2015). Congress therefore prohibited the state departments of motor vehicles from disclosing personal information obtained by the department in connection with a motor vehicle record except for specified purposes. 18 U.S.C. § 2721. "The Act also regulates the resale and redisclosure of drivers' personal information by private persons who have obtained that information from a state DMV." <u>Reno v. Condon</u>, 528 U.S. 141, 143-44 (2000).

The DPPA is fairly limited in scope. Although state and local agencies throughout the country collect personal data when a permit, permission, or other benefit is sought, Congress chose to regulate the use and disclosure of personal information only when it was collected by the state departments of motor vehicles. Neither the Ordinance nor the current implementing regulations require the driver coordinators to obtain information collected, generated, or held by the DMV. Plaintiffs do not allege that the for-hire drivers license or permit numbers that must be disclosed were issued by the state department of motor vehicles, are contained in its motor vehicle records, or are printed on their drivers' licenses. The implementing rules specifically require disclosure of licenses or numbers generated by King County and/or the City of Seattle, not the DMV. The allegations of the complaint do not, therefore, give rise to a plausible inference that the information that must be disclosed is "from a motor vehicle record" regulated by the DPPA.

//

//

1    For all of the foregoing reasons, defendants' motion to dismiss (Dkt. # 41) is GRANTED
2 and all of the claims in this matter are DISMISSED. The preliminary injunction entered in
3 Chamber of Commerce of the United States of America v. City of Seattle, C17-0370RSL, Dkt.
4 # 49 (W.D. Wash. Apr. 4, 2017), is hereby DISSOLVED.

Dated this 24th day of August, 2017.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge